UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:** <br> **MAISON ROYALE, LLC** <br> **DEBTOR** | **CASE NO. 23-5760** <br><br> **SECTION L (1)** |

### ORDER & REASONS

Before this Court is an appeal from the Bankruptcy Court for the Middle District of Louisiana[1] brought by Appellant Rick Sutton ("Appellant" or "Sutton"). Sutton timely filed an appellant brief. R. Doc. 8. Appellee Jack Adams ("Appellee" or "Adams") timely filed an appellee brief. R. Doc. 11. Sutton filed a reply brief. R. Doc. 12. The Court heard oral argument from the parties on May 8, 2024. After a review of the briefing, record, and applicable law, the Court now rules as follows.

### I.   BACKGROUND

This case is an appeal from the bankruptcy court relating to the bankruptcy petition of Debtor Maison Royale, LLC ("Debtor" or "Maison Royale"). R. Doc. 1. Sutton appeals the bankruptcy court's denial of his emergency motion to dismiss, which the bankruptcy court premised on principles of judicial estoppel. The underlying arguments on appeal require contextualization within the broader history of litigation among the parties and a brief background is in order.

---

[1] The Bankruptcy Court for the Eastern District of Louisiana referred this matter to the Middle District due to a conflict.

1

In 2011, Sutton and Adams attempted to form a joint business venture by forming the Debtor Maison Royale LLC, and it was contemplated that each would own 50% of the Debtor. Adams alleges that Sutton never contributed his financial obligations to earn him his originally contemplated 50% and therefore Sutton was classified an employee of the Debtor. *Id.* According to Adams, Sutton allegedly never received equity disbursements, a K-1, or other indicia of ownership. Sutton however disputes this and has largely maintained that he is a part owner. *See* R. Doc. 8 at 9-11. By 2014, their relationship had deteriorated, and Sutton was terminated from his employment whereafter he began filing lawsuits in state court against Adams, the Debtor, and various other entities. Many of these lawsuits to some extent orbited the contested ownership of the Debtor, with Sutton alleging he was a 50% owner and Adams alleging Sutton was not an owner but instead was an employee. *See Sutton v. Adams*, 318 So. 3d. 776, 780-81 (La. App. 4 Cir. 2018); Appellee's Brief, R. Doc. 11 at 7-8.

Relevant for this appeal, in 2015 Sutton and Adams entered into an agreement that would settle the various lawsuits Sutton filed against Adams in state court and which also provided that Sutton would purchase the Debtor, in its entirety, from Adams for $2.8 million. R. Doc. 11 at 8; Bankr. No. 23-10966, R. Doc. 55-1 at 15-20 (Louisiana Fourth Circuit Order, Oct. 18, 2016). However, Sutton refused to sign the consent judgment and he appealed two trial court rulings to the Louisiana Court of Appeal for the Fourth Circuit related to this failed agreement: (1) the trial court's denial of his motion to set aside the consent judgment, and (2) the trial court's holding him in contempt for refusing to sign it and ordering that he pay $1 million to Adams. Bankr. No. 23-10966, R. Doc. 55-1 at 15. The Fourth Circuit held that the consent judgment was null and void on two separate grounds: first, the failure of Adams to provide certain financial information regarding the Debtor, as required by the consent judgment, and second, because the consent

2

judgment was not signed by Polly Point Imports Corporation ("Polly Point"), a company wholly owned by Adams and which has an interest in the Debtor. Id. at 17-18. The Polly Point holding is central to this appeal. Specifically, the court stated the following:

> This Court also notes that the consent judgment is an absolute nullity pursuant to La. C.C.P. art. 641 because Polly Point Imports Corporation ("Polly Point") was not disclosed as a partial owner of Maison Royale until after the consent judgment was confected. Both the First and Third Circuits held that judgments, including consent judgments, regarding rights to immovable property were absolutely null where non-joined parties' rights to the immovable property were affected by the judgment. *See Stephenson v. Nations Credit Fin. Servs. Corp.*, 98-1688 (La. App. 1 Cir. 9/24/99), 754 So. 2d 1011; *Wiley v. Wiley*, 97-652 (La. App. 3 Cir. 12/10/97), 704 So. 2d 897. In the present matter, Polly Point was not included in the suit or in the consent judgment as a partial owner of Maison Royale. The closing documents prepared only contained a place for Mr. Adams' signature as the owner of Maison Royale. Therefore, the documents would not have conveyed complete ownership of Maison Royale to Mr. Sutton because there was no signatory for Polly Point. Mr. Adams contends that this error was harmless because he is the 100% owner of Poly Point. However, Poly Point is a separate and distinct juridical entity. Polly Point's interests in Maison Royale were impacted by the consent judgment. Without Polly Point, "complete relief cannot be accorded." Therefore, we find that Polly Point was an indispensable party pursuant to La. C.C.P. art. 641. As such, we deem the consent judgment an absolute nullity and remand for further proceedings.

*Id.* at 18. Thereafter, Sutton and Adams continued in litigation and Sutton eventually filed a suit against Adams and Polly Point, among others, alleging fraud and misrepresentation claims related to this failure to disclose Polly Point's interest in the Debtor in the consent judgment, breach of fiduciary duty, and other claims. *See Sutton*, 318 So. 3d at 782-83. The Fourth Circuit affirmed the trial court's dismissal of the fraud claim because Sutton failed to show this omission was "intentional for the purpose of deceiving him," and the court observed that "Adams's tax returns dating back to 2011 – which were given to Mr. Sutton by November 19, 2014, before the parties entered into the proposed settlement agreement – clearly disclosed Polly Point's one percent interest." *Id.* The court also affirmed the trial court's dismissal of Sutton's breach of fiduciary duty claim, stating as follows:

3

> In the instant case, the trial court determined that the corporate documents that the defendants admitted into evidence, including the filings with the Louisiana Secretary of State and with the Internal Revenue Service, were the most clear and objective manner of determining Maison Royale's ownership. These documents plainly showed that Mr. Sutton was not a member of Maison Royale and therefore he had no right of action for breach of fiduciary duty because he was claiming an alleged duty not owed to him but to Maison Royale and its members.

*Id.* at 783. The Louisiana Supreme Court denied Sutton's subsequent appeal of this ruling. *Sutton v. Adams*, 267 So. 3d 1112 (La. 2019).

On June 20, 2023, Adams put the Debtor into bankruptcy and days later, Sutton filed an emergency motion to dismiss the bankruptcy petition on the grounds that it was filed without authority. R. Doc. 8 at 12. The bankruptcy court ultimately denied Sutton's motion to dismiss and denied his subsequent motion for reconsideration. *Id.* at 5. It is this denial that Sutton now appeals.

## II.     THE APPEAL

Sutton appeals the August 4, 2023 order of the bankruptcy court denying his emergency motion to dismiss the bankruptcy filing. The bankruptcy court premised its denial on the grounds that Sutton was judicially estopped from "challenging the authority to file this bankruptcy case by asserting now that Polly Point Imports Corp. is not a member of Maison Royale, LLC." R. Doc. 1-3. As explained above, on June 20, 2023, Adams put the Debtor into bankruptcy. Just days later, Sutton filed an emergency motion to dismiss the case, which was set for a hearing on August 3, 2023 before the bankruptcy court. R. Doc. 8 at 12. Then, on July 28, Sutton filed an unopposed motion to continue the hearing on the emergency motion to dismiss and because he wanted more time to "prepare evidence in response to the judicial estoppel argument raised by Adams." *Id.* Sutton alleges that, on that same day, the court continued Sutton's motion for relief from stay but did not move the hearing on his motion to dismiss. *Id.* Further, Sutton alleges that the court refused

4

to allow any testimony at that August 3 hearing but, for the purpose of the motion, assumed that Sutton did own 50% of the Debtor. *Id.* at 12-13.

The court ruled orally during that hearing that Sutton was "judicially estopped from challenging the authority to file this bankruptcy case by asserting now that Polly Point Imports Corp. is not a member of Maison Royale, LLC." *Id.* at 13. The two findings Sutton challenges are (1) Sutton is estopped from arguing that Polly Point is not a member of the Debtor, and (2) the bankruptcy filing was authorized by a majority of the Debtor's members, 2:1 (Adams and Polly Point against Sutton). *Id.* at 15.

Sutton's appeal is premised on his position that he owns 50% of the Debtor and that Adams owns 50% of the Debtor, so Adams could not unilaterally put the Debtor into bankruptcy. Complicating matters is that, at some point prior, Adams allegedly transferred 1% of his interest in the Debtor to Polly Point. *Id.* at 8-11. Thus, the Debtor's ownership structure – according to Sutton – looks like this: 50% is owned by Sutton, 49% is owned by Adams, and 1% is owned by Polly Point (which Adams wholly owns).

Sutton argues that there was no written operating agreement governing the Debtor and therefore Louisiana's default LLC rules govern. *Id.* at 15-16. These rules provide that voting rights in an LLC cannot be transferred absent unanimous consent in writing, which Sutton never provided. *Id.* Therefore, Sutton argues that any interest Polly Point owns in the Debtor is *economic only* and even if he is estopped from contesting Polly Point's *economic* interest in the Debtor, this should not estop him from contesting Polly Point's *voting rights* in the Debtor for the purpose of arguing that that the bankruptcy was filed without a majority of voting members. *Id.*

Sutton additionally argues that the bankruptcy court misapplied the estoppel doctrine, which requires a finding of three factors: "(1) the party's position is clearly inconsistent with the

5

previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *Id.* at 16-17. Suttons says none of these three factors are satisfied.

The inconsistency here is purportedly with a position Sutton took in the consent judgment litigation. *Id.* at 17-18. The position he took at that juncture was that Polly Point's interest in the Debtor was not mentioned in the consent judgment and he protested this absence because he, allegedly, was concerned that he would then not have 100% of the Debtor if he signed an agreement which was not signed by Polly Point. *Id.* at 18-19. Sutton says this position is perfectly consistent with his position here, that Polly Point has no voting interest in the Debtor. *Id.* He argues that this context allows him to reconcile these two positions and that they do not implicate estoppel. *Id.* at 20. Sutton then argues that the second factor does not exist because the state court never found that Polly Point has voting rights, and therefore estoppel was erroneously applied here. *Id.* at 21-22. Last, Sutton argues that he was entitled to an evidentiary hearing on this matter, but the bankruptcy court denied this. *Id.* at 22-23.

In response, Adams argues that Sutton waived this voting rights/economic rights distinction by not raising it at any point until this appeal, including by failing to raise it in his emergency motion to dismiss and his motion for reconsideration before the bankruptcy court. Appellee's Brief, R. Doc. 11.

### III.   LAW & ANALYSIS

The parties assert that this Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1), which grants district courts the jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). However, upon a closer review of the law of this circuit, the Court finds that the underlying order that Sutton appeals is in fact interlocutory.

In the Fifth Circuit, an order *denying* a motion to dismiss is considered interlocutory and thus appealable only if leave of the court is granted to appeal. *Matter of Phillips*, 844 F.2d 230, 234-36 (5th Cir. 1988). An order is considered final in the bankruptcy context if it constitutes "either a 'final determination of the rights of the parties to secure the relief they seek,' or a final disposition 'of a discrete dispute within the larger bankruptcy case.'" *In re Tullius*, 500 F. App'x 286, 288-89 (5th Cir. 2012) (quoting *In re Bartee*, 212 F.3d 277, 282 (5th Cir. 2000)). Nonfinal orders, or interlocutory orders, "typically fall within one of two categories: orders in which the merits of the discrete judicial unit are not determined, or orders that *do* reach the merits, but which do not constitute 'the end of the road for the losing party.'" *Id.* at 289 n.7. "An example of the latter includes an order denying a motion to dismiss." *Id.* (citing *Matter of Phillips*, 844 F.2d at 235-36).

In *Matter of Phillips*, the Fifth Circuit grappled with whether it, as a court of appeals, had jurisdiction over an appeal from a district court's order in a bankruptcy case. 844 F.2d at 234-36. *Matter of Phillips* involved an appeal to the district court of a bankruptcy court's order denying a motion to dismiss on the grounds that the debtor had not satisfied eligibility requirements. *Id.* The district court denied the motion, finding that the debtor had not abused the bankruptcy process, and permitted the matter to proceed. *Id.* at 232. Then, one of the parties filed an appeal to the district court, which dismissed the appeal as moot because, as the underlying bankruptcy matter proceeded, the debtor had been granted an order of discharge. *Id.* at 232-33. A party then appealed that district court dismissal to the Fifth Circuit, which grappled with its own appellate jurisdiction in this case, but in doing so discussed whether a bankruptcy court's denial of a motion to dismiss constitutes a final order. *See id.* at 233-36. Ultimately, the Fifth Circuit concluded that the bankruptcy court's denial of the motion to dismiss is a nonfinal order because, "[l]ike an order that

7

determines that the bankruptcy court has jurisdiction, an order determining that a debtor is eligible allows the bankruptcy proceedings to continue. It is thus a 'preliminary step in some phase of the bankruptcy proceeding,' and does not 'directly affect' the disposition of the estate's assets." *Id.* at 235-36.

Other circuits have found denials of motions to dismiss to be nonfinal as well. *See, e.g.*, *In re Donovan*, 532 F.3d 1134, 1137 (7th Cir. 2008) ("Based essentially on this logic, the weight of circuit authority has concluded that orders denying a motion to dismiss for bad faith or abuse are not appealable. At least three other circuits have specifically held that an order denying a motion to dismiss a Chapter 11 bankruptcy case for abusive filing is not a final order."); *Gebhardt v. Hardigan*, 512 B.R. 385, 387 (S.D. Ga. 2014) ("Other circuits have found that a denial of a motion to dismiss a Chapter 7 case is generally interlocutory because the resultant effect is that the case merely proceeds in the bankruptcy court."); *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1379 (9th Cir. 1985) ("When a creditor moves to dismiss for bad faith filing, he need make no showing of harm to his property interests from the continuance of the bankruptcy case. On the other hand, his request for relief from the automatic stay for lack of adequate protection is premised on a showing of imminent harm to his property interests. It follows that a denial of the creditor's petition for relief from the automatic stay will frequently cause him irreparable harm if he has to wait to the end of the bankruptcy case to appeal."). *But see In re Brown*, 916 F.2d 120, 123-24 (3d Cir. 1990) (holding that a denial of a motion to dismiss for bad faith is appealable).

The underlying order by the bankruptcy court that Sutton appeals here is an order denying his motion to dismiss, which had the functional result of permitting the bankruptcy case to continue, thus this was merely "a preliminary step in some phase of the bankruptcy proceeding" that did not "directly affect the disposition of the estate's assets." *See Matter of Phillips*, 844 F.2d

8

at 235-36. In the Fifth Circuit, this order is considered interlocutory and therefore it is not appealable by right under 28 U.S.C.§ 158(a). To appeal an interlocutory order, Sutton would need to seek leave of this Court. However, Sutton did not seek nor obtain leave of this Court to file this appeal.

However, some courts have found no "jurisdictional defect" in a party's failure to seek leave to appeal an interlocutory order. *Central Illinois Savings & Loan Ass'n v. Rittenberg Co. Ltd.*, 85 B.R. 473, 479 (N.D. Ill. 1988) ("Furthermore, Bankruptcy Rule 8003 provides that, as long as a notice of appeal is timely filed, the failure to request leave to appeal is not a jurisdictional defect; the district court may grant leave to appeal *sua sponte* at any time."). The notice of appeal was timely filed in this case.

In any event, district courts reviewing bankruptcy appeals are cautioned against reviewing interlocutory orders unless in "exceptional circumstances." *In re CIS Corp.*, 188 B.R. 873, 878 (S.D.N.Y. 1995). Bankruptcy appellate courts and panels consider the same elements enumerated in 28 U.S.C. § 1292(b), which sets the standard for federal appellate courts reviewing district courts' interlocutory orders. *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 823-24 (S.D. Fla. 2007); *In re Traversa*, 371 B.R. 1, 4 (D. Conn. 2007). Courts evaluating whether to review an interlocutory order on appeal from a bankruptcy court will consider whether the order or issue "(1) involves a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) is such that an immediate appeal would advance the ultimate termination of the litigation." *Figueroa*, 382 B.R. at 823-24. "Leave must be denied if the party seeking leave to appeal fails to establish any one of the three elements" *Id.* at 824 (citing *In re Celotex Corp.*, 187 B.R. 746, 749 (M.D. Fla. 1995)).

9

The first element is satisfied if the controlling question "deals with a question of 'pure' law, or matters that can be decided quickly and cleanly without having to study the record." *Id.* The third element is deemed satisfied "if resolution of the controlling question of law substantially reduces the amount of litigation left in the case." *Id.* at 825-26. Whether there is "substantial ground for difference of opinion" is shown if "at least two courts interpret the relevant legal principle differently." *Id.* at 824.

In this case, the Court cannot conclude that Sutton has proven all three elements. The appeal he brings involves principles of judicial estoppel related to positions Sutton has taken in past litigation in state court. There is simply no way to characterize such a record-driven and fact-intensive inquiry as a question of pure law. Further, a resolution of this question – whether Sutton is estopped from contesting Polly Point's interest in the Debtor (or the *nature* of its interest in the Debtor) – will not reduce the amount of litigation left in this case. First, the bankruptcy court assumed for the purpose of his motion that Sutton is a part owner of the Debtor, but this is a fact highly in dispute. If this Court were to decide the estoppel question either way, for Sutton or against him, the bankruptcy case will continue and Sutton's ownership will remain in dispute between the parties as they pursue parallel state court litigation as well. Further, should this Court agree with Sutton and find that the bankruptcy court misapplied the judicial estoppel principle in the context of Sutton's motion to dismiss, this does not automatically require the bankruptcy court to dismiss the case – it merely opens another line of argument, the Polly Point argument, for Sutton to pursue in urging the bankruptcy court to dismiss the case. This is hardly a situation in which resolving the question will reduce future litigation and streamline the case.

Accordingly, the Court denies leave to appeal this interlocutory order by the bankruptcy court denying Sutton's motion to dismiss the bankruptcy case due to bad faith filing. For the foregoing reasons, this appeal from the bankruptcy court is **DISMISSED**.

New Orleans, Louisiana, this 23rd day of May, 2024.

_____
United States District Judge